**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Network Multifamily**
**Security Corporation,**

    **Plaintiff,**

v.

**JT Schirm Farms, LLC,** *et al.***,**

    **Defendants.**

Case No. 2:08-CV-00297
**JUDGE SMITH**
**Magistrate Judge King**

## OPINION AND ORDER

Plaintiff Network Multifamily Security Corporation ("Network") brings this action against Defendants JT Schirm Farms, LLC, K and R Schirm Farms, LLC, BF Schirm Farms, LLC, NTO Group, LLC (collectively "Schirm Defendants") and Schirm Farms Realty, LLC ("SFR"), alleging state law claims for breach of contract and unjust enrichment against the Schirm Defendants and state law claims of conversion and unjust enrichment against SFR. The Schirm Defendants bring crossclaims against SFR, alleging state law claims for breach of contract, breach of implied in fact contract, quantum meruit / unjust enrichment, and promissory estoppel (Docs. 12 and 30).

There is diversity of citizenship between Network and Defendants, and the amount in controversy exceeds $75,000. Therefore, the Court has subject matter jurisdiction over Network's claims pursuant to 28 U.S.C. § 1332(a). In addition, this Court has supplemental jurisdiction over the Schirm Defendants' state law crossclaims against SFR pursuant to 28 U.S.C. § 1367(a).

This matter is before the Court on Network's Fed. R. Civ. P. 56 motion for summary judgment against the Schirm Defendants, seeking judgement on its breach of contract claim (Doc. 23). For the reasons that follow, the Court **GRANTS** Network's motion for summary judgment (Doc. 23). In addition, Crossclaim Defendant SFR's Fed. R. Civ. P. 56 motion for summary judgment against Network and Crossclaim Plaintiff Schirm Defendants, seeking judgment on all claims asserted against SFR, is pending (Doc. 32). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** SFR's motion for summary judgment (Doc. 32).

## I. BACKGROUND

The facts that give rise to this case involve the real property known as the Schirm Farm Apartments, located in Canal Winchester, Ohio.

Plaintiff Network is a Delaware corporation engaged in the business of installing and monitoring alarm systems. On January 8, 2003, Network entered into an Alarm Services Agreement ("ASA") with Casto Community Construction Limited ("Casto"). Pursuant to the ASA, Network agreed to install and monitor 264 security alarm systems and related services and one clubhouse ("Alarm Systems") at Schirm Farm Apartments. In exchange, Casto agreed to pay a monthly service charge of $9.50 per unit for the Alarm Systems, which amounted to a monthly payment obligation of approximately $2,518. The term of the Agreement was ten and one third years.

In mid-March 2004, Casto assigned the ASA to the Schirm Defendants, who agreed to be bound by the terms of the ASA. Network continued to provide Alarm Services to the Schirm Defendants, who made payments to Network under the terms of the ASA.

In November 2006, the Schirm Defendants transferred the property to SFR.[1] Thereafter, Network did not receive payment for the Alarm Services as required by the ASA. The Schirm Defendants and SFR vigorously dispute whether, as part of this transfer, the ASA was assigned to SFR, or if not, whether SFR should be liable pursuant to an equitable doctrine.

On March 21, 2008, Network sent a letter to SFR, requesting the return of its equipment. In May 2007, Matthew Teichman, the district manager of the Schirm Farms Apartments in May 2007, spoke with an agent of Network, indicating that Network could retrieve their equipment from Schirm Farms Apartments so long as they agreed to execute an agreement with SFR, holding SFR harmless from all damages associated with the removal.

On March 31, 2008, Network initiated the instant action against the Schirm Defendants to recover monies owed under the ASA (Doc. 2). Network alternatively pleads conversion and unjust enrichment claims against SFR. On June 3, 2008, the Schirm Defendants brought a breach of contract crossclaim against SFR (Doc. 12). On December 2, 2008, the Schirm Defendants filed an Amended Crossclaim, asserting additional claims for breach of implied contract, quantum meruit, and promissory estoppel against SFR (Doc. 30).

On October 2, 2008, Network filed a Fed. R. Civ. P. 56 motion for summary judgment against the Schirm Defendants, seeking judgment on its breach of contract claim (Doc. 23). On October 27, 2008, the Schirm Defendants filed their memorandum in opposition (Doc. 27). On November 5, 2008, Network filed its Reply (Doc. 28).

Thereafter, on January 5, 2009, Crossclaim Defendant SFR filed a Fed. R. Civ. P. 56

---

[1] On June 20, 2006, the Schirm Defendants entered into a Purchase and Sale Agreement ("PASA") for the sale of the property. The PASA was subsequently assigned to SFR in October 2006. SFR took title to the property pursuant to PASA's terms on November 6, 2006.

motion for summary judgment against Network and the Schirm Defendants, seeking judgment on all claims asserted against it (Doc. 32). On February 13, 2009, Crossclaim Plaintiffs the Schirm Defendants filed their memorandum in opposition (Doc. 41). Network did not oppose the motion. On February 24, 2009, SFR filed its Reply (Doc. 45). On February 27, 2009, Crossclaim Plaintiffs the Schirm Defendants filed a Sur-Reply (Doc. 45).

All pending motions have been fully briefed and are ripe for review.

## II. SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the non-moving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150-51 (2000).[2] The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the non-moving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.,* quoting *Liberty Lobby*, 477 U.S. at 257. The non-moving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the non-moving party to merely "'show that there is some metaphysical doubt as to

---

[2] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the non-moving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

5

the material facts.'" *Id.,* quoting *Matsushita*, 475 U.S. at 586.

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the non-moving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d at 665.

## III. DISCUSSION

The Court first considers the arguments set forth by Network in favor of summary judgment on its breach of contract claim against the Schirm Defendants. Next, the Court considers SFR's arguments in favor of summary judgment on the conversion and unjust enrichment claims asserted against it by Network. Finally, the Court addresses SFR's arguments in favor of summary judgment on the crossclaims asserted against it by the Schirm Defendants.

### A. Network's Breach of Contract Claim Against the Schirm Defendants

Network is entitled to summary judgment on its breach of contract claim against the Schirm Defendants.

To prevail on a breach of contract claim, a plaintiff must demonstrate the following elements: (1) that a valid contract existed; (2) the plaintiff fulfilled its contractual obligations; (3) the defendant failed to fulfill its obligations; and (4) damages resulted from this failure. *See e.g.*, *Yoder v. Hurst,* 2007 WL 2729423, *5 (Ohio App. 10 Dist. 2007) (citation omitted).

The material facts are not in dispute. Specifically, the parties do not dispute the existence or validity of the ASA, which was assigned to and assumed by the Schirm Defendants in 2004.

The ASA contains the following relevant provisions:

**SECTION XIII(B): DEFAULT**

* * *

B.  In the event that Customer (i) fails to pay any amount due hereunder or fails to comply with any of the terms and conditions hereof within thirty (30) days of receipt of written notice thereof (except that no notice is required with respect to the immediate default set forth in Section XIV,A) . . . , then Network may pursue any one or more of the following remedies which are nonexclusive:

  1. Terminate all Services as provided for hereunder;
  2. Recover from Customer all accrued and unpaid amounts due and owing hereunder including interest;
  3. Remove and take possession of all Equipment including associated wiring located on the Property;
  4. Accelerate all payments due and recover from Customer those amounts provided for in Section X, F.

**SECTION XIV(D): ASSIGNMENT**

A.  Customer has the right to assign or otherwise transfer this Agreement, without the consent of Network, to a legal entity that purchases the property, *provided that Network shall (a) receive written notice of such assignment prior to the sale or other disposition of the property (b) such entity shall execute a written agreement with Network to perform and be bound by all of the terms, conditions, and obligations of Customer hereunder and (c) Network is provided with a copy of such written agreement. Any other assignment or transfer of this Agreement by the Customer without the written consent of Network, not to be unreasonably withheld, shall constitute an immediate default*. It is acknowledged and agreed by Customer that this Agreement is intended to run with the Property and that it would seriously damage Network to make an assignment or other disposition of the Property except in strict accordance with this Section. Every purported assignee or transferree of this Property taking title or possession of the Property in violation of this Section shall nonetheless be obligated and bound by all the terms and conditions hereof. *No assignment or transfer shall release Customer from any obligations hereunder.*

* * *

> D. Should Customer sell or otherwise transfer or dispose of the Property without assigning or transferring this Agreement to new ownership as set forth in this Agreement, then Network shall be entitled to recover from Customer those amounts set forth in Section X, Paragraph F plus any and all past due amounts.
>
> **SECTION X: GRANT OF LICENSE**
>
> \* \* \*
>
> F. This Agreement may be concluded by the Customer at any time upon giving ninety (90) days' written notice to Network, and the payment to Network of the net present value of the balance of payments due under this Agreement for the remaining contract term, using a discount factor equal to the prime rate as published in the Wall Street Journal as published on the day of notice of default. Upon such termination, Network shall be entitled to recover all of its equipment. Customer agrees that the provision allowing Network to collect the unpaid balance of payments is a liquidated damages provision and is not a penalty.
>
> **SECTION XV: ATTORNEY'S FEES**
>
> A. If legal action is brought by either of the parties hereto, the prevailing party shall be entitled to recover reasonable attorney's fees and other related costs and expenses in addition to any other relief which may be awarded.

(Compl., Ex. A) (emphasis added).

The Schirm Defendants also do not dispute that Network performed under the agreement. Finally, there is no dispute that Network was not paid monies owed under the ASA and therefore damaged. Rather, the Schirm Defendants' sole defense to Network's motion for summary judgment is that "there is a genuine dispute as to whether the Schirm Defendants assigned the [ASA]." (Schirm Defs.' Memo. in Opp'n to Network's Mot. for Summ. J. at 3).

This defense fails. The Court reaches this conclusion by applying the ASA's clear and unambiguous language regarding assignments. *See Davis v. Loopco Industries, Inc.,* 66 Ohio St.3d 64, 66 (1993) ("If a contract is clear and unambiguous, then its interpretation is a matter of

8

law and there is no issue of fact to be determined."); and *Fouty v. Ohio Dept. of Youth Servs.*, 167 Ohio App.3d 508, at ¶ 64 (Ohio App. 10 Dist. 2006) ("Contracts that are, by their terms, clear and unambiguous require no real interpretation or construction, and courts will enforce such contracts as written.").

The ASA permits assignment so long as: (1) Network receives written notice of the assignment *prior* to the sale; (2) the assignee executes a written agreement with Network; and (3) Network is provided with a copy of the written assignment agreement. (*See* Compl., Ex. A at Section XIV(A)). Any assignment that does not comply with these terms, places the assignor—here, the Schirm Defendants—in default. (*Id.*).

It is undisputed that *none* of the ASA requirements for an assignment occurred—Network did not: (1) receive written notice of the assignment prior to the sale; (2) execute a written agreement with SFR; or (3) receive a copy of the written assignment agreement. Thus, to the extent the Schirm Defendants assigned the ASA to SFR,[3] the Schirm Defendants are in default pursuant to ASA, Section XIV(A). Indeed, the ASA explicitly provides: "No assignment or transfer shall release Customer from any obligations hereunder." (*Id*). To the extent the Schirm Defendants transferred the property to SFR without assigning the SFR, the Schirm Defendants are in default pursuant to Section XIV(D).

Thus, the Court concludes that the undisputed material facts warrant the entry of judgment in Network's favor on Network's breach of contract claim against the Schirm Defendants.

---

[3]The Court considers whether or not a valid assignment of the ASA exists between the Schirm Defendants and SFR *infra* at Section III.C.

There is a discrepancy in the amount Network claims it is owed under the ASA due to the Schirm Defendant's breach. In its Complaint, Network alleges that the Schirm Defendants owe $194,059.03. (Compl. ¶ 11). In its motion for summary judgment, Network asserts that the Schirm Defendants owe $136,802.04. (Pl.'s Mot. for Summ. J. at 5). Network also seeks interest, costs and attorney's fees pursuant to ASA Section XV. Briefing on all damages issues shall follow the briefing schedule set forth *infra* at Section IV, the Conclusion Section.

**B.     Network's Conversion and Unjust Enrichment Claims Against SFR**

SFR is entitled to summary judgment on the conversion and unjust enrichment claims asserted against it by Network.

First, based upon the Court's conclusion that the Schirm Defendants remain liable to Network for the monies owed under the ASA, Network cannot maintain its unjust enrichment claim against SFR. To the extent a valid unjust enrichment claim against SFR exists, it belongs to the Schirm Defendants. Accordingly, SFR is entitled to judgment on Network's unjust enrichment claim.

Second, SFR has offered evidence demonstrating that Network cannot maintain its conversion claim against it. "'[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592 (2001) quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). Conversion "consists of three basic elements: (1) a defendant's exercise of dominion or control (2) over a plaintiff's property (3) in a manner inconsistent with the plaintiff's rights of ownership." *Jarupan v. Hanna*, 173 Ohio App.3d 284, at ¶ 15 (Ohio App. 10 Dist. 2007) (citation omitted). "If a defendant comes into

possession of property lawfully, a plaintiff must prove two additional elements: (1) that she demanded the return of the property after the defendant exercised dominion or control over the property and (2) that the defendant refused to deliver the property to the plaintiff." *Id.* at ¶ 15 (citation omitted). SFR, in its motion for summary judgment, introduces evidence demonstrating that SFR has never refused to return Network's property, and SFR further represents that it has indicated to Network on multiple occasions that it is welcome to retrieve its property. (SFR's Mot. for Summ. J. at 22). Network does not dispute the evidence presented by SFR or otherwise oppose SFR's motion for summary judgment. Accordingly, SFR is entitled to judgment on Network's conversion claim.

### C.     The Schirm Defendants' Crossclaims Against SFR

SFR asserts that it is entitled to judgment on each of the crossclaims the Schirm Defendants bring against it. Specifically, SFR maintains that the breach of contract claim cannot survive because the elements necessary to form a contract are lacking, and additionally, because any purported contract would be barred by Ohio's Statute of Frauds. (SFR's Mot. for Summ. J. at 9-15). Likewise, SFR maintains the breach of implied contract claim fails because the requisite elements are indisputably missing. (*Id.* at 15-17). SFR further maintains that the unjust enrichment claim fails because the Schirm Defendants fail to demonstrate a benefit was provided sufficient to sustain such a claim. (*Id.* at 17-19). Finally, SFR asserts it is entitled to judgment on the promissory estoppel claim because there was no requisite clear and unambiguous promise and further because Ohio's Statute of Frauds bars such claim. (*Id.* at 20-21). The Court considers SFR's arguments in favor of summary judgment on each of the Schirm Defendants' crossclaims in turn.

### 1. Breach of Contract (Count One)

SFR is entitled to summary judgment on the Schirm Defendants' express breach of contract crossclaim because the evidence demonstrates that no such contract had arisen. Specifically, the Court finds that there was no meeting of the minds on the proposed ASA assignment.

"Courts generally determine the existence of a contract as a matter of law." *Applegate v. Northwest Title Co.,* 2004 WL 585592, *3 (Ohio App. 10 Dist. 2004) (citations omitted). "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3 (2002). "Fundamental to a valid contract formation is that the parties must evince a meeting of the minds; that is, valid offer and acceptance such that a reasonable person would find that the parties manifested a present intention to be bound to an agreement." *Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005 WL 2292800, *15 (Ohio App. 9 Dist. 2005), citing 17 Ohio Jurisprudence 3d (2003), Contracts, Sections 15, 16, 18, 24. *See also*, *Noroski v. Fallet*, 2 Ohio St.3d 77, 79 (1982) ("The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other.") and *Purdin v. Hitchcock*, 1993 WL 19508, *8 (Ohio App. 4 Dist.), citing *Episcopal Retirement Homes, Inc. v. Ohio dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991) ("[T]o declare the existence of a contract, the parties to the contract must consent to its term, there must be a meeting of the minds of both parties, and the contract must be definite and certain.").

As in the instant case, there is often confusion over when negotiations ripen into an enforceable contract:

> "That an offer is distinguished from preliminary negotiations is a fact well recognized in the law of contracts. * * * 'Frequently negotiations for a contract are begun between parties by general expressions of willingness to enter into a bargain upon stated terms and yet the natural construction of the words and conduct of the parties is [ ] that they are inviting offers, or suggesting the terms of a possible future bargain, [rather] than making positive offers.'" *Cohen v. Johnson* (M.D.Pa., 1950), 91 F.Supp. 231, 235, quoting Williston on Contracts (Revised Ed.) vol. 1, Sec. 27.

*Telxon Corp.,* 2005 WL 2292800, at *15. "As a rule, 'agreements in principle' that refer to subsequent 'formal agreements' are not binding." *Id.*, citing Arthur Linton Corbin, Contracts § 30 at 97 (1963). In determining whether there has been a meeting of the minds, a court must "conduct a complete inquiry of the events and communications surrounding the alleged agreements(s), and thereafter render a decision on the formation of a contract as a matter of law." *Telxon Corp.,* 2005 WL 2292800, at *15.

In the instant case, the Schirm Defendants allege that subsequent to the transfer of property pursuant to the PASA, SFR agreed to the assignment of the ASA. The Schirm Defendants' counsel, Mr. Czekaj, represents that upon receiving an invoice from Network, he spoke with SFR's counsel regarding the ASA, and SFR's counsel promised him that "he would take care of it and to prepare an Assignment for his signature." (Czekaj Aff. ¶ 2). Mr. Czekaj further represents that he prepared the Assignment, sent it to SFR's counsel, and that he has "a good faith belief that [he] received a faxed copy of the executed Assignment from SFR's counsel, but [he] is not certain" and is unable to locate a signed copy. (*Id.* at ¶¶ 3-4). SFR's counsel, Mr. Kirschner, contrarily represents that he does not remember a phone conversation with Mr. Czekaj and that he "would not have executed an Assignment and Assumption Agreement on behalf of

13

[his] client without [his] clients' express authorization," and therefore, he attests that he "did not execute an Assignment and Assumption Agreement on behalf of [the Schirm Defendants]." (Kirschner Aff. ¶¶ 6-7). Instead, Mr. Krischner represents that on November 22, 2006, Mr. Czekaj sent him an email with an attached letter and draft assignment, but that he did not recall responding to the email. (*Id*. at ¶¶ 4-5). SFR attached a copy of the email, letter and draft assignment to their motion for summary judgment. (SFR's Mot. for Summ. J., Ex. D). The Schirm Defendants do not dispute the authenticity of the letter and draft assignment, and it appears that if Mr. Czekaj's representations are accepted as true, this is the Assignment he represents he sent to Mr. Krischner and that he has a "good faith belief . . . but [he] is not certain . . ." was executed and faxed back to him. The letter attached to the email was drafted by Mr. Czekaj to Mr. Krischner and provides in relevant part:

> Network Multifamily Security Corporation which provides the alarm system for Schirm Farms is advising that if they do not receive a signed Assignment and Assumption of the service agreement that they intend to pull their alarm equipment.
>
> I am forwarding to you an Assignment and Assumption Agreement together with copies of the original service contract and Acceptance and Assignment to my Clients, the Sellers. Time is of the essence since I would expect that you do not wish to have the alarm system pulled from the apartments. Please advise.

(*Id*.).

It is undisputed that a written, fully-executed assignment does not currently exist,[4] and the Court finds that no valid oral contract exists because there was no genuine meeting of the minds.

---

[4] Mr. Czekaj's speculation that he received a faxed copy of the executed Assignment from Mr. Krischner but is "not certain" that he received it (*See* Czekaj Aff. ¶ 4) does not create a genuine issue of material fact as to the existence of an executed Assignment for purposes of summary judgment.

14

Mr. Krischner's alleged representation to Mr. Czekaj that he would "take care of it," and his direction to Mr. Czekaj to "prepare an assignment for his signature," do not amount to an unconditional acceptance of the essential terms of the alleged oral assignment.[5] Instead, Mr. Krischner's communications are exemplary of a non-binding "agreement in principle" referencing a subsequent formal agreement. As such, Mr. Krischner's alleged assertions are more properly characterized as offers to negotiate, invitations to submit a proposed assignment, or as offers by Mr. Krischner to take any proposed draft assignment to his client. Consistent with this conclusion, Mr. Czekaj's letter, which was attached to the November 22, 2006 email and sent *after* Mr. Krischner's alleged assertions, informs SFR that to effectuate an assignment of the ASA, SFR must execute and return the Assignment Agreement. Moreover, the letter concludes: "Please advise," which suggests that SFR sought a determination by the Schirm Defendants as to whether they agree to the proposed Assignment Agreement, which was also attached to Mr. Czekaj's November 22, 2006 email. Thus, it is clear that, at the time the letter was drafted, even Mr. Czekaj did not perceive that there had been a genuine meeting of the minds.

    In conclusion, even construing the facts in a light most favorable to the Schirm Defendants, the Court agrees with SFR that the essential elements of a contract have not been satisfied because there was no meeting of the minds. Accordingly, SFR is entitled to judgment on the Schirm Defendants' crossclaim for breach of contract.

---

[5]Indeed, the Schirm Defendants do not allege or provide evidence indicating that SFR had ever viewed or otherwise discussed the essential terms of the underlying ASA.

**2.  Breach of Implied in Fact Contract (Count Two)**

The Schirm Defendants' breach of implied in fact contract crossclaim fails for the same reason their breach of express contract claim did—there was no meeting of the minds with respect to the assignment of the ASA.

Like express contracts, contracts implied in fact also require a meeting of the minds. *See Catlett v. Cent. Allied Ents., Inc.* 2009 WL 2859223, *2 (Ohio App. 7 Dist.), citing *Legros v. Tarr*, 44 Ohio St.3d 1, 7 (1989). "In contracts implied in fact, the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding." *Waffen v. Summers,* 2009 WL 1741731, *5 (Ohio App. 6 Dist.), citing *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938).

For the reasons set forth in the foregoing Section, SFR's alleged conduct,[6] including Mr. Krischner's alleged assertions, do not amount to "circumstances which make it inferable that [the assignment contract] exists." Accordingly, SFR is entitled to judgment on the Schirm Defendants' crossclaim for breach of contract implied in fact.

**3.  Quantum Meruit / Unjust Enrichment (Count Three)**

The Schirm Defendants' unjust enrichment crossclaim survives summary judgment.

"[A] claim for unjust enrichment lies whenever a benefit is conferred by a plaintiff upon a defendant with knowledge by the defendant of the benefit, and retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Merchants Advance, L.L.C. v. Boukzam,* 2008 WL 4356102, *4 (Ohio App. 8 Dist. 2008), citing *Guardian*

---

[6]For example, SFR did not make any payments to Network.

*Technology, Inc. v. Chelm Properties, Inc.*, 2002 WL 31087415, *2-4 (Ohio App. 8 Dist. 2002) (discussing in depth the law regarding unjust enrichment).

SFR asserts that they never used the Network's alarm systems, and therefore, no benefit sufficient to sustain an unjust enrichment claim was conferred. (SFR's Mot. for Summ. J. at 18-19). The Schirm Defendants dispute SFR's contention that no benefit has been conferred. To support their position, the Schirm Defendants point out that SFR advertises Network's alarm system as an amenity to potential renters. (*See* SFR internet advertisement, Defs.' Mem. in Opp. to SFR's Mot. for Summ. J. at Ex. B).

The Court finds that there exists a genuine issue of material fact as to whether a benefit sufficient to sustain an unjust enrichment claim was conferred. Accordingly, summary judgment on the Schirm Defendants' unjust enrichment claim is improper.

### 4. Promissory Estoppel (Count Four)

SFR is entitled to summary judgment on the Schirm Defendants' promissory estoppel crossclaim.

The elements necessary to establish a claim for promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Stull v. Combustion Engineering, Inc.*, 72 Ohio App.3d 553, 557 (1991); *Ohio Environmental Dev. Ltd. v. Ohio Environmental Protection Agency*, 2010 WL 438142, *4 (Ohio App. 10 Dist. 2010). "The party asserting promissory estoppel bears the burden of proving, by clear and convincing evidence, all of the elements of the claim." *McBride v. McBride*, 2009 WL 1310969, *2 -3 (Ohio App. 5 Dist. 2009) (citation omitted).

As set forth above, Mr. Krischner's alleged representation to Mr. Czekaj that he would "take care of it," and his direction to Mr. Czekaj to "prepare an assignment for his signature," do not amount to the requisite "clear and unambiguous" promise, and instead, are more properly characterized as offers to negotiate, invitations to submit a proposed assignment, or as offers by Mr. Krischner to take any proposed draft assignment to his client. (*See* discussion *supra* at Section III.C.1).

Accordingly, SFR is entitled to summary judgment on the Schirm Defendants' promissory estoppel crossclaim because SFR fails to demonstrate the existence of the requisite clear and unambiguous promise.

## IV. CONCLUSION

As set forth above, the Court **GRANTS** Network's motion for summary judgment against the Schirm Defendants (Doc. 23). The Court has identified a discrepancy in the amount Network claims it is owed under the ASA due to the Schirm Defendants' breach. (*See supra*, at Section III.A). No later than April 12, 2010, fourteen days from the date of this Opinion and Order, Network shall, by motion and memorandum in support, address all damages issues, including this discrepancy and requested attorneys' fees. Any Response shall be filed on or before April 19, 2010, and any Reply on or before April 26, 2010.

In addition, the Court **GRANTS IN PART AND DENIES IN PART** SFR's motion for summary judgment (Doc. 32). Network's claims against SFR are dismissed with prejudice. The Schirm Defendants' crossclaim against SFR for unjust enrichment (Count Three) remains pending. The remainder of the Schirm Defendants' crossclaims against SFR are dismissed with prejudice.

The Clerk shall remove Documents 23 and 32 from the Court's pending motions list.

**IT IS SO ORDERED.**

 **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**